**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Linda Marie Fuess, | No. CV-22-02051-PHX-DGC |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of the Social Security Administration, | |
| Defendant. | |

Plaintiff Linda Marie Fuess seeks review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of the Social Security Administration ("SSA"), which denied her application for disability insurance benefits and supplemental security income benefits. For reasons stated below, the Court will reverse the decision and remand the case for further proceedings.

**I.      Background.**

Plaintiff is a 59-year-old woman with an associate's degree. Administrative Transcript ("Tr.") 41, 250. From 2001 to 2017, Plaintiff reported self-employment income from a tree-trimming business she owned with her former husband. Tr. 341-42. In June 2018, Plaintiff applied for social security benefits, alleging a disability date of January 1, 2002. Tr. 315-28. She later amended her alleged onset of disability to December 29, 2017. Tr. 14.

Plaintiff alleges that she suffers from congestive heart failure, chronic arthritis in her back and hips, a sleep disorder, celiac disease, and a Stage 2 Fatty Liver.  Tr. 363.

After a telephonic hearing, the ALJ denied Plaintiff's claim on July 30, 2020.  Tr. 157-74.  On March 22, 2021, the Appeals Council remanded for further proceedings and a new hearing.  Tr. 177-81.

Plaintiff and a vocational expert ("VE") testified at a new hearing on August 12, 2021.  Tr. 65-86.  On September 10, 2021, the ALJ issued a written decision denying the claim.  Tr. 11-32.  This became the Commissioner's final decision when the Appeals Council denied review on October 3, 2022.  Tr. 1-6.  Plaintiff commenced this action for judicial review on December 2, 2022.  Doc. 1.  The parties briefed the issues after receipt of the certified administrative transcript.  Docs. 26, 30, 31.

**II.   Legal Standard.**

The Court reviews only those issues raised by the party challenging the ALJ's decision.  *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).  The Court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error.  *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).  Substantial evidence is more than a scintilla, less than a preponderance, and relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the whole record.  *Id.*  In determining whether substantial evidence supports a decision, the Court must consider the entire record and may not affirm simply by isolating a "specific quantum of supporting evidence."  *Id.* (cleaned up).  The ALJ is responsible for resolving conflicts in medical testimony, determining credibility, and resolving ambiguities.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).  In reviewing the ALJ's reasoning, the Court is "not deprived of [its] faculties for drawing specific and legitimate inferences from the ALJ's opinion."  *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989).

### III. The ALJ's Five-Step Evaluation Process.

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, and the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). A claimant must show that (1) she has not engaged in substantial gainful activity since the alleged disability date, (2) she has a severe impairment, and (3) her impairment meets or equals a listed impairment or (4) her residual functional capacity (RFC) – the most work she can do with her impairments – precludes her from performing past work. If a claimant meets her burden at step three, she is presumed disabled and entitled to benefits. § 404.1520(a)(4)(iii). If a claimant meets her burden at step four, then (5) the Commissioner must show that the claimant is able to perform other available work given her RFC, age, education, and past work experience. § 404.1520(a)(4)(v); *see Tackett*, 180 F.3d at 1099.

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity from her alleged onset date of December 29, 2017 through December 31, 2021, when she last met the insured status requirement of the Social Security Act. Tr. 17. At step two, the ALJ found that Plaintiff had the following severe impairments: cervical and lumbar spondylosis, bilateral knee osteoarthritis, left shoulder osteoarthritis, peripheral neuropathy, and obesity. *Id.* At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. Tr. 19. At step four, the ALJ found that Plaintiff had the RFC to perform light work with some limitations. Tr. 19-24.[1] The ALJ found Plaintiff's prior work as an administrative assistant for her former husband's tree-trimming company was substantial gainful activity, that Plaintiff had performed it long enough to achieve average

---

[1] Light work is defined by 20 C.F.R. § 404.1567(b) and "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." Light work may require a substantial amount of walking or standing or sitting with pushing and pulling of arm or leg controls. *Id.* The ALJ specified that she could carry twenty pounds occasionally and ten pounds frequently, could stand and walk for six-hours in an eight-hour workday, could sit for six hours in an eight-hour workday, and could occasionally climb ramps and stairs but could never climb ladders or scaffolds. Tr. 19.

performance, and that Plaintiff had performed it during the relevant period. Tr. 25-26. The ALJ then agreed with the VE that Plaintiff could return to her past relevant work as actually performed. Tr. 25. Thus, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act from December 29, 2017, through September 10, 2021. Tr. 26.

## IV. Discussion.

Plaintiff argues that the ALJ erred by improperly concluding that her work for her former tree-trimming business was past relevant work. Plaintiff also contends that the ALJ erred by improperly discrediting Plaintiff's symptom testimony, and by failing to support the assigned RFC classification with substantial evidence. Doc. 26 at 3. She asks the Court to remand her case for an award of benefits.

### A. Plaintiff's Past Relevant Work.

When a case cannot be resolved at one of the first three steps of the evaluation process, the ALJ must consider whether a claimant can perform "past relevant work" in light of her RFC. 20 C.F.R. § 404.1520(a)(4)(iv). Past relevant work is "work that you have done within the past 15 years, that was substantial gainful activity, and that lasted long enough for you to learn to do it." 20 C.F.R. § 404.1560(b). Plaintiff disputes whether the ALJ correctly classified her prior work for her family business, of which she was a part owner, as substantial gainful activity. Doc. 26 at 3.

The ALJ concluded that Plaintiff's past administrative work for her family tree-trimming business was "substantial gainful activity, was performed long enough for the claimant to achieve average performance and was performed within the relevant period." Tr. 25. The ALJ provided no explanation as to why this activity qualified as past relevant work, stating only: "As required by SSR 82-62, this work was substantial gainful activity, was performed long enough for the claimant to achieve average performance and was performed within the relevant period."[2]

---

[2] The ALJ's decision cites Social Security Regulation ("SSR") 82-62, but provides no explanation as to how this regulation was utilized in determining that Plaintiff has past relevant work. Tr. 25. As noted by Plaintiff, SSR 82-62 explains the procedures for determining a disability claimant's *capacity* to do past relevant work, but does not address how to determine whether something is past relevant work. Doc. 31 at 1-2. The parties do

- 4 -

SSA regulations provide three tests to determine if self-employed activity is substantial gainful activity:

> (1) Test One: You have engaged in substantial gainful activity if you render services that are significant to the operation of the business and receive a substantial income from the business. Paragraphs (b) and (c) of this section explain what we mean by significant services and substantial income for purposes of this test.
>
> (2) Test Two: You have engaged in substantial gainful activity if your work activity, in terms of factors such as hours, skills, energy output, efficiency, duties, and responsibilities, is comparable to that of unimpaired individuals in your community who are in the same or similar businesses as their means of livelihood.
>
> (3) Test Three: You have engaged in substantial gainful activity if your work activity, although not comparable to that of unimpaired individuals, is clearly worth the amount shown in § 404.1474(b)(2) when considered in terms of its value to the business, or when compared to the salary that an owner would pay to an employee to do the work you are doing.

20 C.F.R. § 404.1575(a). *Id.*

In defending the ALJ's conclusion, the Commissioner examines tests one and two, concluding that under either Plaintiff's administrative work would constitute substantial gainful activity.[3] Doc. 30 at 4-5. But the Commissioner cannot tell the Court which test the ALJ relied on because the ALJ did not say. Tr. 25. "While the Court will not fault the ALJ for explanations that are 'less than ideal clarity,' the ALJ is required to set forth reasoning sufficient for a meaningful review." *Johnson v. Comm'r of Soc. Sec. Admin.*, No. CV-20-00445, 2022 WL 2056390 (D. Ariz. Mar. 30, 2022), *report and recommendation adopted*, No. CV-20-00445, 2022 WL 1565010 (D. Ariz. May 18, 2022) (citing *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015); *see also Montoya v. Colvin*, 649 F. App'x 429, 431 (9th Cir. 2016) (finding the ALJ erred by not "addressing

---

not appear to dispute whether the activity was performed long enough for Plaintiff to achieve average performance or whether it was performed within the relevant period.

[3] The Commissioner also contends that Plaintiff admitted the work qualifies as substantial gainful activity when she amended her alleged onset of disability date from 2002 until 2017 based on her "work history." Doc. 30 at 6 n.2. Plaintiff maintains that the amendment was due to her receipt of earnings through 2018 and distinguishes between "working" and completing substantial gainful activity. Doc. 31 at 3.

the substantial gainful activity issue or developing the record on it" when the record was unclear whether a plaintiff earned more than the level set by the agency). Because the ALJ did not provide any reasoning for his conclusion that Plaintiff's past work was substantial gainful activity, the Court is unable to review the decision and must find error. *Id.* at 430.

What is more, the record on whether Plaintiff's prior work constitutes substantial gainful activity is unclear. On one hand, Plaintiff submitted a Work History Report in June 2018 which indicated that she worked as an office manager and vehicle and equipment maintenance person for her family tree service beginning in 1999. Tr. 371. The report said she performed both positions from her home office eight hours per day, five to six days per week. Tr. 372-73. The report explains that she did "[f]inancial and accounting, answer phone calls, write up work order, data entry, computer work." Tr. 372. It indicates she received $38,027 annually and was in this role until 2018. It also reported that she "[p]erformed repairs and maintenance on vehicles and equipment" until 2009, for which she was paid $27,000 annually. The Commissioner contends that this Work History Report shows Plaintiff's prior work was substantial gainful activity, working well beyond the 45 hour per month threshold applied under test one. The ALJ never cited the report.

On the other hand, the report is inconsistent with Plaintiff's testimony at the August 12, 2021 hearing, where Plaintiff suggested that her work activities were not significant to the business:

> Q: What was your last job?
>
> A: It was – it was – well, we were self-employed. My – my ex ran a business – a tree service. And I helped with him with that.
>
> Q: What kind of work were you doing for the business?
>
> A: More or less just kind of the office stuff. To me - - he might have me sign a check or deposit a check or the girls that worked in the office, they would, you know, like if they – they had questions or something, I – I could show them how to do it –
>
> Q: Okay. So you –
>
> A: – something like –
>
> Q: You were doing some of the administrative work in the office as well?

> A: I – I guess more – it was more like my daughter, and then there may be another girl working in the office.  If they had like – if they didn't understand something or had a problem with a customer or something like that, I could, you know, I could show them what they needed to do, you know, how to –
>
> Q: Okay.
>
> A: -- handle situations –
>
> Q: Did you do –
>
> A: -- and stuff like that.
>
> Q: Did you do work as well aside from helping others?
>
> A: Like I said, I would sign – sign the checks.  I would – like if my – if my – our bank was right next to my son's school, so my – my ex-husband would say, you know, go drop this off.  I need it in the bank right now, something like that.  So since I was picking up my son, I'd take the check.  Yeah, if – like say a new person came in, and I might help train them to show them what needs to be done, and then my daughter would, you know, take it from, you know, whatever point.

Tr. 41-43.  Plaintiff went on to explain that though she was technically a 51% owner of the tree-trimming business, her ex-husband had made her the primary owner in hopes that it would help them win government contracts.  Tr. 43.  She further clarified that she spent no money running the business, and that the business ended when her marriage did.  Tr. 44.

Plaintiff's reply brief explains the inconsistent Work History Report as follows:

> [T]he work history report did not require a signature or attestation under penalty of perjury, while her hearing testimony was given under oath.  It is reasonable to assume that the plaintiff felt compelled to bolster her work in the business when writing the report knowing she received 51% of the business profits and not fully understanding tax liability rules.  However, once under oath, with the threat of penalty of perjury, this former U.S. Marine disclosed a more accurate picture of the business and her contribution to it.

Doc. 31 at 3 (citations omitted).  This account is supported by examiner Joanna Dunlap, who noted Plaintiff had not worked in "nearly 20 years," had "primarily acted as a stay at home wife and mother" and had last held a formal job in 1999.  Tr. 644.

Thus, while Plaintiff's Work History Report suggests Plaintiff spent significant time working for the family business, her testimony and other evidence suggest she only did

- 7 -

incidental work for her husband. Resolving this evidentiary ambiguity is not the Court's role. "[A] federal court's review of Social Security determinations is quite limited. . . . [W]e leave it to the ALJ to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record." *Brown-Hunter v. Colvin*, 806 F.3d at 492 (cleaned up). Because the ALJ never addressed the tests for determining whether Plaintiff's past work was substantial gainful activity, the Court will not do so.

"Harmless error principles apply in the Social Security context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless if it is not prejudicial to the claimant or is "inconsequential" to the ALJ's "ultimate nondisability determination." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006). This error is not harmless. If the ALJ were to apply the § 404.1575(a) tests and find that Plaintiff's prior work was not substantial gainful activity, the ALJ would then be required to complete the step five analysis on whether there are jobs existing in the national economy that she could perform with her RFC. *See* 20 C.F.R. § 404.1520(a)(4); SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The ALJ never undertook this analysis. "Thus, this decision was not 'inconsequential to the ultimate nondisability determination.'" *Johnson*, WL 2056390 at *4 (citing *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020)).[4]

/ / /

---

[4] Plaintiff suggests that the error was harmful because under Plaintiff's determined RFC, with no past relevant work for the past 15 years, the Medical-Vocational Guidelines would direct a finding of disability under grid rule 202.13. Doc. 26 at 8. The Medical-Vocational Guidelines have three age categories: (1) younger person (under 50); (2) person closely approaching advanced age (50-54); and (3) person of advanced age (55) or older. 20 C.F.R. § 404.1563(c)-(e). Advanced age "significantly affects a person's ability to adjust to other work." § 404.1563(e). Plaintiff was 53 at the time she applied for benefits, meaning that she was "closely approaching advanced age." Plaintiff is correct that if the ALJ determined she had no prior relevant work, grid rule 201.13 would apply. But under that rule, a person limited to light work is *not disabled* where she is closely approaching advanced age, is at least a high school graduate, and is unskilled. 20 C.F.R. Part 404, Subpart P, Appendix 2. Now that Plaintiff is 59 years old, she is deemed to be of "advanced age," and if unskilled, she would be assessed under grid rule 202.06. Grid rule 202.06 directs a finding of disability for unskilled persons restricted to light work, of advanced age, and with a high school degree which does not provide for direct entry into skilled work. Thus, for the period of time after Plaintiff turned 55, the Medical-Guidelines would appear to direct a finding of disability if the ALJ determines Plaintiff has no prior relevant work.

- 8 -

### B. Plaintiff's Symptom Testimony.

An ALJ must engage in a two-step analysis when evaluating a claimant's symptom testimony. First, the ALJ must determine whether the claimant presented objective medical evidence of an impairment that could reasonably be expected to produce the alleged symptoms. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). The claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptoms she has alleged, only that it could reasonably have caused some degree of the symptoms. *Id.* Second, if there is no evidence of malingering, the ALJ may reject the claimant's symptom testimony only by giving specific, clear, and convincing reasons. *Id* at 1015.

The ALJ properly evaluated Plaintiff's testimony. Because there is no evidence of malingering, the ALJ was required to make "specific findings stating clear and convincing reasons" for discounting the testimony. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996); *see* 20 C.F.R. § 404.1529(c)(2); SSR 96-7p, 1996 WL 374186, at *1 (July 2, 1996). "'General findings are insufficient; rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.'" *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).

Plaintiff testified about her symptoms at two administrative hearings. On July 13, 2020, Plaintiff testified that she was unable to work due to knee and arm pain. Tr. 71-74. She testified that her knee is permanently swollen, she cannot straighten it, that she has difficulty completing the stairs to her apartment, and that she is awaiting a total knee replacement on the right side. *Id.* She testified that pain from neck arthritis radiates down both shoulders. Tr. 73-74. Plaintiff testified that she cannot type for longer than five minutes without becoming extremely fatigued, and often drops items because she does not have the strength to lift them. Tr. 76. Plaintiff testified that she has trouble showering and changing her clothes and relies on her mother and sister for grocery shopping. Tr. 76-77.

At a second hearing on August 12, 2021, Plaintiff again testified to leg and arm pain. Tr. 45-48. She testified that she needs a full right knee replacement, and that she had surgery on her left knee after a fall. Tr. 46-47. She spends the majority of her day in her recliner and cannot let her left shoulder relax. Tr. 49, 51. She uses a walker to move, but only leaves the house for doctor's appointments. Tr. 50. She testified that she has used a cane for over a decade (*id.*), and relies on family members to take her son to school, help her with personal hygiene activities, clean her home, and grocery shop. Tr. 53-54.

The ALJ recounted Plaintiff's testimony in detail. Tr. 20. He first found that her medically determinable impairments could reasonably be expected to cause some of her alleged symptoms. *Id.* He also found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of the[] symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" *Id.* The ALJ did not completely reject Plaintiff's testimony, but instead found that objective findings, clinical findings, Plaintiff's treatment, and her daily activities suggested that the Plaintiff's symptoms did not render her unable to engage in light work. Tr. 19-20.

### 1. Objective & Clinical Findings.

"While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (citing 20 C.F.R. § 404.1529(c)(2)); *see Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis."); SSR 16–3p, 2017 WL 5180304, at *5 (Oct. 25, 2017) (explaining that "objective medical evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms, including the effects those symptoms may have on the ability to perform work-related activities"). An ALJ may rely on contradictory medical evidence to discredit symptom testimony, so long as he "make[s]

specific findings justifying his decision." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008).

The ALJ noted that the record reflects a history of multiple musculoskeletal impairments for which the claimant has sought treatment. Tr. 21. But the ALJ also found that imaging studies show a higher level of functioning than Plaintiff's testimony suggested. Tr. 27. This includes a 2014 MRI showing only mild degenerative changes in the lumbar spine (Tr. 21), 2019 MRIs of the lumbar and cervical spine (Tr. 21), and 2019 electrodiagnostic testing consistent with cervical radiculopathy at the C5 level (Tr. 21). The ALJ cited 2019 imaging studies which showed mild degenerative changes of the left shoulder, mild joint effusion of the right knee, a "largely normal" left forearm (Tr. 21), and 2020 negative x-rays of the bilateral shoulders and feet (Tr. 22). The ALJ also cited a 2020 MRI and x-ray of the left knee, which showed mild narrowing of the medial compartment, mild spurring, and medial and lateral meniscal tears. Tr. 22. After describing these medical records, the ALJ explained:

> While the foregoing objective reports are consistent with some abnormality of the claimant's spine and lower extremities, there is no evidence of any nerve root impingement, severe stenosis, progressive neurologic deficits, infections, tumors, or fractures to cause the severity of pain and limitations alleged.

*Id.*

Plaintiff alleges multiple errors in the ALJ's assessment, including the exclusion of relevant studies (Tr. 479-80, 565, 998); the statement that x-rays of bilateral shoulders were normal when imaging was only done of left shoulder (Tr. 21, 1147, 1150); and the conclusion that there was "no evidence of any nerve root impingement" despite a 2019 cervical spine MRI identifying "[s]ubtle ventral cord flattening" at C4-C5 (Tr. 1009). *See* Doc. 26 at 9-12. But "in interpreting the evidence and developing the record, the ALJ does not need to 'discuss every piece of evidence.'" *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (citation omitted). And while the ALJ was incorrect in concluding that there is no evidence of nerve root impingement (discussed further below),

he correctly noted that the records suggest only mild degenerative findings within the relevant time period.

The ALJ also relied on records of six physical exams that he suggests are inconsistent with the Plaintiff's allegations. Tr. 22. He cited a July 2019 physical examination which revealed tenderness in the cervical paraspinous muscles, decreased range of motion in the lumbar spine, positive straight leg raising tests, and pain with extension of the right knee. Tr. 22. He also noted physical examinations in November 2020 that revealed "normal range of motion and strength, no tenderness, no swelling, some swelling of the knee and painful flexion and intact sensation," examinations in 2021 that "revealed the claimant was able to ambulate with a normal gait, full range of motion in all major joints, and some decreased sensation in her bilateral feet," and an April 2019 consultative examination which noted a minor to mild limp, slow gait, negative straight leg raising tests, minor muscle atrophy in the right knee, and a reduced range of motion in the knees. Tr. 22.

Plaintiff contends that the ALJ mischaracterized some of the clinical findings, noting that though the November 6, 2020 examination found her to have "normal range of motion and strength, no tenderness or swelling," the "Assessment" portion of the report indicates the presence of knee, left shoulder, and bilateral foot pain, and includes a prescription for Cymbalta for pain management. Tr. 1145-46. Similarly, though the January 5, 2021, examination indicates normal gait and full range of motion, the assessment notes indicate that the appointment was with an urgent care provider for the purposes of evaluating whether Plaintiff had contracted COVID-19. Tr. 1179-80. This visit occurred less than a month after Plaintiff had surgery on her left knee, and two months prior to the start of Plaintiff's post-surgical physical therapy for the injury. Doc. 26 at 14. At her initial physical therapy appointment, the doctor noted she "has limitations walking, standing, squatting, and [doing] stair negotiation without pain." Tr. 1189. Plaintiff argues that this context suggests that a full physical examination may not have been completed

and sheds doubt on the report's reliability for assessing Plaintiff's musculoskeletal conditions.

After reviewing the findings in Plaintiff's clinical examinations, the ALJ provided this explanation:

> These findings were accounted for in the claimant's RFC restricting her to performing light work with occasional climbing ramps and stairs, stooping, kneeling, crouching, and crawling, no climbing ladders, ropes, or scaffolds, occasional reaching overhead with the left upper extremity and limited exposure to hazards.
>
> . . . .
>
> Most examinations show normal gait and posture and generally normal neurological findings (Ex. 2F).  It is also noted that the claimant reported doing a lot of packing for her move during the psychiatric consultative examinations (Ex. 4F).  Further, recent examinations show she remains neurologically intact, with full strength, normal gait, and no musculoskeletal findings of pain or restrictions (Exs. 11F; 14F).  She has only a few examinations with lumbar range of motion restrictions, which support a light RFC and even the MRI scans show only mild findings (Exs. 14F; 15F; 16F).  Accordingly, the undersigned is unable to find the claimant more limited than described in the RFC.

Tr. 22-23.

The ALJ cited several examples where medical providers described Plaintiff as having full range of motion, normal strength, normal neurological functioning, and lack of gait abnormalities.  *See* Tr. 1004 (normal range of motion), 1048 ("Full cervical motion. Motor strength is 5/5"), 1145 ("[n]ormal range of motion and strength, no tenderness or swelling)".  To be sure, the record also contains evidence suggesting continued knee pain and a limp.  *See* Tr. 1056 (Plaintiff "demonstrates an antalgic limp[,]" has "the inability to full straighten her knee[.]").  But while the medical record can be read in some ways to favor Plaintiff, the ALJ's reading is rational and constitutes substantial evidence on which to base his findings.  The Court accordingly finds that the ALJ stated clear and convincing reasons, based on inconsistency in the medical records, to discredit Plaintiff's symptom testimony.

As directed by the Appeals Council, the ALJ also considered Plaintiff's daily use of an assistive device. Tr. 23. He noted that on Plaintiff's request, she was provided a four-wheeled walker by the Department of Veteran's Affairs. Tr. 1216. The ALJ also noted, however, that the consultative examiner evaluated her need for such a device and determined she did not require one. *Id.* The ALJ found that Plaintiff's cane was not needed due to a lack of support from objective testing. While Plaintiff is correct that there are references throughout the record to her use of a cane (*e.g.*, Tr. 1054 ("ambulates with a cane"), 1465 ("ambulates with a cane")), there are also those where a cane was not identified (*e.g.*, Tr. 1062 (no use of a cane), 1439 ("normal gait and erect posture")). Though the Court on its own might reach a different conclusion, given the inconsistencies in the record the ALJ had sufficient reasons for concluding that Plaintiff was not required to use an assistive device. *Thomas*, 278 F.3d at 954.

### 2. Course of Treatment.

"[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding [the] severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007). The ALJ found that treatment for Plaintiff's conditions has been "conservative and routine." Tr. 23. The record does not support this conclusion.

The ALJ cited to various treatment modalities noted within the record. He cited Plaintiff's 2016 complaints of widespread joint pain, noting that she indicated physical therapy did not help, that the pain continued through 2017, and that the record did "not reflect substantial treatment for her severe physical impairments over the course of 2018," but did indicate the ongoing prescription of pain medication. Tr. 23. The ALJ noted that Plaintiff was prescribed a course of lumbar epidural steroid injections to address her arm, leg, and back pain in December 2019, received follow-up injections in 2020, and reported some improvement from the injections. Tr. 1084-87. The ALJ also cited knee injections Plaintiff received in July 2019, a December 2020 left knee arthroscopy to address a left knee medial meniscus tear, and a recommendation in February 2020 that Plaintiff ultimately seek a total right knee replacement. The ALJ noted that Plaintiff reported less

pain post-surgery, but that she required physical therapy for her knee in 2021, and that despite treatment, she still suffered when walking, kneeling, and putting pressure on her knees. The ALJ also noted that the Plaintiff's carpal tunnel syndrome was treated with an injection in the right hand in February 2020, with no follow-up treatment. Tr. 17.

Without further explanation, the ALJ then concluded that the above course of treatment was "conservative" and "inconsistent" with Plaintiffs allegations. Tr. 23. As Plaintiff notes, however, the Ninth Circuit has expressed skepticism that epidural shots to the lower back qualify as conservative medical treatment. *See Garrison*, 759 F.3d at 1015 n.20. The ALJ acknowledged that Plaintiff required surgical intervention for her left knee, her surgeon expected ongoing knee pain following the surgery, and at least one medical provider has suggested surgical intervention will be necessary on her right. Tr. 1060, 1178. The ALJ also notes that Plaintiff relies on prescription medication to manage her pain. "Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits." *Warre v. Comm'r of Social Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). But the record does not show that Plaintiff's pain was effectively controlled by her medication. Despite on-going prescriptions of narcotics, she regularly reported pain from her neuropathy. Tr. 1144-45; *see also Messinger v. Comm'r of Soc. Sec. Admin.*, No. CV-16-02529-PHX-DGC, 2017 WL 2351663 at *7 (D. Ariz. May 31, 2017). The ALJ's bare assertion that Plaintiff's course of treatment has been conservative is not a sufficiently clear and convincing reason to discount her symptom testimony.

### 3. Daily Activities.

The ALJ concluded that reports of Plaintiff's daily activities indicated they "are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." Tr. 24. The ALJ relied on Plaintiff's May 2021 report that she was able to maintain activities of independent daily living, a December 2020 statement that she was interested in joining a book club, and her ability to home school her special needs son while balancing housework. Tr. 24. The ALJ also suggested that although Plaintiff reported

being unable to drive due to pain, this might instead be because she had in the past struggled to pay for her automotive insurance. *Id.* The ALJ concluded that the physical and mental capabilities required to perform these tasks, as well as the social interactions that they suggest, refute her testimony.

As the ALJ notes, in a May 2021 appointment with a social worker, Plaintiff was found to be "Capable of Independence" and able to perform activities of daily living. Plaintiff said she was "able to help [her] kids out and be there for them." Tr. 1232. In a January 2020 appointment she reported being busy unpacking from a move, (Tr. 1362), and in an April 2020 appointment she indicated that she was home-schooling her son while balancing housework (Tr. 1347). In a 2018 exam, Plaintiff reported unassisted personal care, being able to complete her own shopping and driving independently. Tr. 643.

As the Commissioner notes, this evidence contradicts Plaintiffs testimony that she "sleep[s] most of the day" and does no housework. Doc. 30 at 9. Though Plaintiff contends that she was only home-schooling her son due to the COVID-19 crisis, the Commissioner correctly notes that this does not undermine the ALJ's finding that she was more capable than her symptom testimony suggests. *Id.* Plaintiff correctly notes that a 2019 report that she was having difficulty paying her car insurance does not necessarily contradict 2021 testimony that she cannot drive due to pain, (Doc. 26 at 22), but the Court finds the ALJ has identified sufficient evidence to discount Plaintiff's symptom testimony.

"Although the evidence of [Plaintiff's] daily activities may also admit of an interpretation more favorable to [her], the ALJ's interpretation was rational, and 'we must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation.'" *Burch*, 400 F.3d at 680-81 (quoting *Magallanes*, 881 F.2d at 750); *Thomas*, 278 F.3d at 959 (explaining that the ALJ may consider daily activities when weighing the claimant's credibility and, "[i]f the ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second-guessing") (citing *Morgan v. Apfel*, 169 F.3d 595, 600 (9th Cir. 1999)).

In summary, although the ALJ erred in announcing without explanation that Plaintiff's course of medical treatment was conservative, his analysis of the objective medical evidence in the record and of Plaintiff's daily activities provided specific, clear, and convincing reasons for discounting her symptom testimony.

### C. Plaintiff's Residual Functional Capacity.

Plaintiff also asserts that the ALJ erred by failing to include limitations in the RFC related to her upper extremities, including reaching in all directions, handling, and fingering. Doc. 26 at 23. Specifically, Plaintiff asserts that the ALJ committed factual error in his analysis of her cervical spine condition. *Id.* at 24. The Court agrees, but finds the error harmless.

In determining Plaintiff's RFC, the ALJ discussed her cervical spine issues, describing a 2019 MRI which showed "degenerative changes at multiple levels throughout the cervical spine, with some ventral cord flattening at C4-C5 without cord signal abnormality[.]" Tr. 22. As Plaintiff notes, the MRI also identified "[m]oderate to severe bilateral degenerative facet arthrosis at T1-T2 . . . likely a source of upper back/neck pain." Tr. 1010. The ALJ concluded that the MRI did not show evidence of any nerve root impingement. Tr. 22.

Plaintiff correctly argues that the ALJ erred in concluding that there was no evidence of nerve root impingement. Johns Hopkins Medicine, *Radiculopathy*, https://www.hopkinsmedicine.org/health/conditions-and-diseases/radiculopathy (last visited Mar. 1, 2024). Nerve root impingement, or radiculopathy, results from compression of a nerve root. When it occurs in the neck (the C1-C7 vertebrae), it is described as "cervical radiculopathy." Cleveland Clinic, *Cervical Radiculopathy (Pinched Nerve)*, https://my.clevelandclinic.org/health/diseases/22639-cervical-radiculopathy-pinched-nerve (last visited Mar. 1, 2024). Ventral cord flattening at C4-C5 is nerve root impingement of the cervical spine. This is supported by additional evidence in the record, including nerve

conduction tests confirming cervical radiculopathy (Tr. 1009-10), and positive Spurling maneuvers during examination (Tr. 1025, 1052, 1082, 1095).[5]

As the Commissioner notes, however, the imaging and tests do not equate to findings that Plaintiff had restrictions with "reaching in all directions, handling and fingering." Doc. 30 at 12. Though Plaintiff cites several places in the record where she identified cervical spine and forearm pain, (*see* Doc. 26 at 26), there are also many records where she was found to have full range of motion (*see* Tr. 1145 (October 2020 exam showing full range of motion); 1139 (October 2019 note showing normal range of motion in her extremities); 1424 (spinal pain does not result in/cause functional loss)). In a March 2020 exam meant to address her right carpal tunnel pain, the examiner noted full cervical motion, a 5/5 motor strength for the bilateral deltoids, biceps, triceps, wrist extensors, finger flexors, and ulnar intrinsic, and full range of motion in the hand, wrist, and forearm. Tr. 1048.

Although the ALJ erred in stating that Plaintiff's MRI showed no nerve root impingement, he acknowledged that Plaintiff suffered from cervical radiculopathy as evidenced by the nerve conduction tests. The Court cannot say his error is harmful given his explicit consideration of Plaintiff's cervical radiculopathy.

## V. Remand for Further Proceedings.

"When the ALJ denies benefits and the court finds error, the court ordinarily must remand to the agency for further proceedings before directing an award of benefits." *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017). Under a rare exception to this rule, the Court may remand for an award of benefits if (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) the ALJ would be required to find the claimant disabled if the improperly discredited evidence were credited as true. *Id.*

---

[5] "The Spurling test is one of the best-known and most widely used provocative tests for the assessment of the cervical spine." Steven J. Jones, John-Mark M. Miller, *Spurling Test*, https://www.ncbi.nlm.nih.gov/books/NBK493152/ (last visited Mar. 1, 2024).

In this case, further proceedings before the ALJ are necessary. As noted above, the ALJ must in the first instance address the conflicting evidence on whether Plaintiff's past work was substantial gainful activity, and must complete the disability analysis on the basis of the resolution of this issue. The Court therefore will remand to the Commissioner for additional proceedings consistent with this order.

**IT IS ORDERED** that the final decision of the Commissioner of Social Security to deny Plaintiff disability and supplemental security insurance benefits (Tr. 11-26) is **reversed**, and this case is remanded for further proceedings. The Clerk shall enter judgment accordingly.

Dated this 29th day of March, 2024.

David G. Campbell
Senior United States District Judge